IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRESENCIANO GUTIERREZ III,

    Plaintiff,

v.                                                                                     1:18-cv-01107-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Cresenciano Gutierrez III's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum (Doc. 22), which was fully briefed on July 3, 2019. *See* Docs. 24, 25, 26. The parties consented to my entering final judgment in this case. Doc. 11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to properly consider the opinion of Mr. Gutierrez's treating physician assistant, Anne Hinton, PA-C. I therefore grant Mr. Gutierrez's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**        **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

**III.   Background and Procedural History**

Mr. Gutierrez was born in 1978, completed high school, and worked as a bartender, liquor store cashier/stocker, prep cook, janitor and maintenance worker. AR 21, 226, 555, 571, 589−91.[4] Mr. Gutierrez filed an application for Disability Insurance Benefits ("DIB") and an application for Supplemental Security Income ("SSI") on May 25, 2010, alleging disability since

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 17-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

December 27, 2009 due to lower back pain, anxiety, depression, insomnia, memory loss and panic attacks. AR 75–76, 194–204, 225. The Social Security Administration ("SSA") denied his claims initially on September 2, 2010. AR 75–77, 80–83. The SSA denied his claims on reconsideration on February 8, 2011. AR 78–79, 84–87. Mr. Gutierrez requested a hearing before an ALJ.[5] AR 96–97. On January 29, 2013, ALJ Jennie L. McLean held a hearing. AR 29–74. ALJ McLean issued an unfavorable decision on May 14, 2013. AR 8–23. Mr. Gutierrez requested review by the Appeals Council, which denied his request. AR 1–7. Mr. Gutierrez filed his first appeal to this Court on January 9, 2015. *See Gutierrez v. Social Security Administration*, No. 15-cv-00027 KBM, Doc. 1 (D.N.M. Jan. 9, 2015). On December 19, 2014, while his first appeal was pending, Mr. Gutierrez filed subsequent applications for DIB and SSI. AR 665, 676, 687–88. On September 28, 2016, Chief United States Magistrate Judge Karen B. Molzen remanded Mr. Gutierrez's case on the basis that the ALJ failed to properly weigh the opinion of Mr. Gutierrez's treating neurosurgeon, Dr. James Melisi. *Gutierrez*, No. 15-cv-00027 KBM, Doc. 25 at 4–10.

On remand, the Appeals Council remanded the case to an ALJ for a new hearing. AR 661–63. On June 14, 2018, ALJ Michael Leppala held a hearing. AR 582–622. Pursuant to the remand order of the Appeals Council, ALJ Leppala consolidated Mr. Gutierrez's subsequent applications for DIB and SSI with his remanded case for DIB and SSI. AR 544, 663. ALJ Leppala issued an unfavorable decision on September 24, 2018. AR 541–73.

ALJ Leppala found that Mr. Gutierrez met the insured status requirements of the Social Security Act through June 30, 2013. AR 547. At step one, the ALJ found that Mr. Gutierrez had

---

[5] The SSA found that Mr. Gutierrez had good cause for his late request for an ALJ hearing. AR 98.

not engaged in substantial, gainful activity since December 27, 2009, his alleged onset date. *Id.* At step two, the ALJ found that Mr. Gutierrez's disorders of the back (discogenic and degenerative), sleep-related breathing disorder, essential hypertension, obesity, affective disorder, anxiety disorder, intellectual disorder, and alcohol and substance addiction disorders were severe impairments. *Id.* The ALJ found that Mr. Gutierrez's "purported memory loss" was a non-severe impairment. *Id.* At step three, the ALJ found that none of Mr. Gutierrez's impairments, alone or in combination, met or medically equaled a Listing. AR 548–54. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Gutierrez's RFC. AR 554–71. The ALJ found Mr. Gutierrez had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations. [He] is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. He is further limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, stooping, kneeling, crouching, and crawling. [He] can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He is limited to simple, routine, and repetitive tasks and he is best suited for jobs involving work primarily with things and not people.

AR 554−55.

At step four, the ALJ found that Mr. Gutierrez "is capable of performing past relevant work as a cleaner." AR 571. However, the ALJ also made alternate findings at step five that Mr. Gutierrez was not disabled because he could perform jobs that exist in significant numbers in the national economy, such as table worker and circuit board assembler. AR 571–72. Because this Court previously remanded Mr. Gutierrez's case, Mr. Gutierrez was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the

5

Commissioner. *See* 20 C.F.R. § 404.984(a). Mr. Gutierrez timely appealed to this Court on November 28, 2018.[6] Doc. 1.

**IV.   Mr. Gutierrez's Claims**

Mr. Gutierrez raises three arguments for reversing and remanding this case: (1) the ALJ improperly weighed the opinion of examining psychologist Robert Kreuger, PhD; (2) the ALJ erred by improperly rejecting the opinion of treating physician assistant Anne Hinton, PA-C, in violation of SSR 06-03p; and (3) the ALJ failed to give specific and legitimate reasons for rejecting the opinions of treating neurosurgeon James Melisi, M.D. Doc. 22 at 1.

Because I find that the ALJ failed to properly consider the opinion of treating physician assistant Anne Hinton, PA-C, I will remand this case. I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.   Analysis**

   **A. <u>The ALJ failed to properly consider the opinion of treating physician assistant, Anne Hinton PA-C</u>.**

Mr. Gutierrez argues that the reasons the ALJ gave for discounting PA-C Hinton's May 9, 2012 opinion are either legally insufficient or not supported by the record. Doc. 22 at 15–18; Doc. 25 at 3–4. In response, the Commissioner argues that "[t]he ALJ provided good reasons for giving little weight" to PA-C Hinton's opinion. Doc. 24 at 11–12. For the reasons discussed below, I agree with Mr. Gutierrez.

---

[6] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued. 20 C.F.R. § 404.984(b)−(d). The claimant then has 60 days to file an appeal to this Court. 20 C.F.R. § 404.981.

PA-C Hinton is considered an "other source" under the regulations. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[7] An "other source" cannot give a "medical opinion," cannot establish the existence of a medically determinable impairment, and is not considered a "treating source[ ]." *Id*. However, "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*. at *3. Opinions from "other sources" are weighed using the same factors used to weigh opinions from acceptable medical sources. *Id*. at *4–*5; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [other source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [other source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted); 20 CFR §§ 404.1527(c), 416.927(c) (both effective March 27, 2017). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

In *Frantz*, the Tenth Circuit held that an ALJ erred by not discussing what weight he gave an "other source" opinion on the severity and functional effects of the claimant's limitations.

---

[7] SSR 06-03p was rescinded "for claims filed on or after March 27, 2017." *See* Federal Register Notice Vol. 82, No. 57, p. 15263, effective March 27, 2017. Because Mr. Gutierrez filed his claims before this date, SSR 06-03p is applicable.

7

509 F.3d at 1302. It also is error for an ALJ to ignore evidence from an "other source" which would support a finding of disability, "while highlighting evidence favorable to the finding of nondisability." *Id.*; *see also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

In this case, PA-C Hinton, who treated Mr. Gutierrez every month between December 2010 and September 2012, completed a Spine Residual Functional Capacity Questionnaire on May 9, 2012, in which she diagnosed Mr. Gutierrez with chronic lower back pain, sciatica and shooting pain down his left leg despite surgical intervention. AR 464–69. She stated that Mr. Gutierrez's symptoms included a decreased range of motion, an abnormal gait, sensory loss, tenderness, muscle weakness, muscle spasms, and a positive straight leg raising test in both legs. AR 465. She found that Mr. Gutierrez's symptoms frequently interfered with his ability to concentrate and pay attention, and that the side effects of his pain medications could have implications on his ability to work. AR 466. As a result of Mr. Gutierrez's impairments, PA-C Hinton opined that Mr. Gutierrez could not continuously sit or stand for more than five minutes at a time, and could not sit, stand, or walk for more than two hours total in an eight-hour workday. *Id.* She stated that Mr. Gutierrez needed a job which permitted shifting positions at will and also permitted him to lay down. AR 467. She stated that Mr. Gutierrez did not need to use a cane or assistive device to engage in occasional standing/walking while at work. *Id.* In addition, she opined that Mr. Gutierrez could occasionally lift and/or carry up to ten pounds, but that he could never bend or twist. AR 468. Lastly, she found that Mr. Gutierrez would need to

take unscheduled breaks every 30 to 60 minutes while at work and was likely to be absent from work more than three times per month as a result of his impairments. AR 467–68.

In his decision, the ALJ afforded little weight to PA-C Hinton's opinion, explaining that:

> Ms. Hinton reported on a Residual Function Capacity Questionnaire that the Claimant experienced abnormal gait, muscle spasm and muscle weakness; however, her own records noted no spasms or weakness. I do note that Ms. Hinton candidly stated that the Claimant need not use a cane or other assistive device to engage in occasional standing/walking. (Ex. 18F/4). She also noted that she encouraged the Claimant to attend a fitness center to lose weight. This would suggest that the Claimant is capable of more physical activity than he alleges. In sum, I afford little weight to Ms. Hinton's medical source statement, however I find that it contains some information I deem more reliable than her conclusion. (Ex. 18F).

AR 568–69.

The first reason the ALJ gave for discounting PA-C Hinton's opinion—that her opinion that Mr. Gutierrez experienced muscle spasms and muscle weakness was not supported by her own treatment notes—is not supported by the record. With regard to muscle spasms, PA-C Hinton's May 9, 2012 treatment note contains a finding of "paravertebral muscle spasm" upon physical examination. AR 537. In addition, on at least two other occasions, PA-C Hinton addressed Mr. Gutierrez's complaints of muscle spasms and prescribed medication used to treat muscle spasms. AR 509–10 (directing Mr. Gutierrez to continue using Flexeril[8] after he reported that his muscle spasms had decreased following previous month's visit in which PA-C Hinton had prescribed Flexeril to treat back pain and muscle cramps); AR 471–72 (assessing Mr. Gutierrez with having had a severe exacerbation of back pain based on his report of a four-day episode of severe back spasms). As to muscle weakness, the ALJ is correct that the term "muscle weakness" was not verbatim mentioned in PA-C Hinton's treatment notes. However,

---

[8] Flexeril, or cyclobenzaprine, is "used short-term to treat muscle spasms." *See* https://www.webmd.com/drugs/2/drug-11372/flexeril-oral/details (last accessed Nov. 5, 2019).

other information in her notes establishes that PA-C Hinton was aware that Mr. Gutierrez suffered from muscle weakness when she prepared her opinion. PA-C Hinton stated that her opinion was based, in part, on spine-lumbar imaging dated January 26, 2011, that showed "significant loss of disk space at the L5-S1 level [and] moderate loss of disk space at L4-L5." AR 400, 464. Based on this imaging, PA-C Hinton referred Mr. Gutierrez to a spine clinic where he saw Dr. Paul Fullerton. AR 459. Dr. Fullerton reviewed the imaging and conducted a physical exam that was positive for musculoskeletal weakness. AR 458–59. Dr. Fullerton sent his examination report to PA-C Hinton, and at Mr. Gutierrez's subsequent appointment with PA-C Hinton, she discussed the referral visit and results with Mr. Gutierrez. AR 459, 512. Thus, contrary to the ALJ's conclusion, there were clinical findings in the record to support PA-C Hinton's opinion that Mr. Gutierrez's symptoms included muscle spasms and muscle weakness.

Despite the above evidence in PA-C Hinton's treatment records, the Commissioner offers two reasons why he thinks it was reasonable for the ALJ to find that PA-C Hinton's opinion was not "well supported by her own examination findings." Doc. 24 at 11. First, he contends that PA-C Hinton's treatment records overall showed "essentially normal" examination findings. *Id*. Second, he maintains that other findings PA-C Hinton made beyond muscle spasms and muscle weakness—specifically, abnormal sensation, abnormal gait, and sensory loss—also were not in her treatment notes. *Id*. at 12. The ALJ, however, did not provide either of these as reasons for assigning PA-C Hinton's opinion little weight. "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007). I conclude that the ALJ's determination that PA-C Hinton's "own records" do not support her opinion is not supported by substantial evidence.

The second reason the ALJ gave for discounting PA-C Hinton's opinion fares no better. The ALJ found that PA-C Hinton's encouragement to Mr. Gutierrez to join a fitness center indicated that Mr. Gutierrez "is capable of more physical activity than he alleges." AR 569. The ALJ failed to cite to any treatment records where PA-C Hinton recommended exercise. However, the Court's review of PA-C Hinton's treatment notes shows multiple visits where she encouraged Mr. Gutierrez to exercise to lose weight. *See, e.g.*, AR 514, 527, 530. In addition, Mr. Gutierrez points to a February 2012 visit during which PA-C Hinton encouraged him to join a gym and "find a low impact way to exercsise (sic) regularly, such as swimming." AR 527–28. But the ALJ failed to explain why he believed that encouraging Mr. Gutierrez "to attend a fitness center to lose weight" undermined PA-C Hinton's opinion regarding the functional limitations that resulted from Mr. Gutierrez's impairments. PA-C Hinton consistently noted that Mr. Gutierrez's obesity likely contributed to his back pain, and she encouraged him to lose weight to relieve his sciatica. *See* AR 472, 478, 481, 528. The fact that he was unable to maintain any significant weight loss would seem to support her opinion regarding Mr. Gutierrez's functional limitations, not undermine that opinion. SSR 06-03p requires that "the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6. Here, because the ALJ failed to offer any further explanation, the Court is unable to follow the ALJ's reasoning as to how recommending exercise for weight loss undermined the functional limitations PA-C Hinton assessed.

The ALJ's reliance on PA-C Hinton's finding that Mr. Gutierrez did not require a cane or assistive device also is insufficient for similar reasons. The ALJ failed to explain why Mr. Gutierrez's ability to walk without a cane undermined PA-C Hinton's opinion regarding Mr.

11

Gutierrez's functional limitations. Although she found that Mr. Gutierrez did not need a cane, PA-C Hinton nevertheless opined that Mr. Gutierrez could not sit or stand for more than five minutes at a time, that he could only occasionally lift up to ten pounds, and that he could never bend or twist. AR 466–68. It is in no way obvious that these limitations only would apply to those individuals who use canes. The ALJ was required to explain how PA-C Hinton's assessment of these functional limitations was undermined by her finding that Mr. Gutierrez did not need a cane. Moreover, in highlighting only PA-C Hinton's finding that Mr. Gutierrez did not need a cane, the ALJ ignored other evidence—including his "decreased forward flexion & rotation @ waist," his "[a]bnormal gait," his "[s]ensory loss," his daily use of oxycodone which caused drowsiness, and the fact that "surgery failed to improve symptoms," AR 465−66—which would support a finding of disability. *See Frantz*, 509 F.3d. at 1302 (ALJ may not ignore evidence from "other source" that supports a finding of disability "while highlighting evidence favorable to the finding of nondisability."). The ALJ was required to address the evidence that supported PA-C Hinton's opinion regarding Mr. Gutierrez's extreme functional limitations. *See id.* The ALJ's failure to do so requires remand.

Lastly, the ALJ stated that although he afforded little weight to PA-C Hinton's opinion, he found the opinion "contains some information [he] deem[ed] more reliable than her conclusion." AR 569. The ALJ did not, however, specify what information from the opinion he found "more reliable." Nor did he explain why this unspecified information was more reliable than other portions of PA-C Hinton's opinion. In this regard, the Court again is unable to follow the ALJ's reasoning.

In sum, the Court concludes that the ALJ failed to properly weigh PA-C Hinton's opinion in accordance with SSR 06-03p. Accordingly, the Court will remand this case so that the ALJ

can explain how he weighed PA-C Hinton's opinion under the applicable regulatory factors. The Court does not reach Mr. Gutierrez's remaining arguments as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

### B. Mr. Gutierrez's Request for an Immediate Award of Benefits

Mr. Gutierrez asks that if this Court remands this case, that it do so for an immediate award of benefits rather than additional proceedings. Doc. 22 at 21–22. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart,* 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotations omitted). A remand for an immediate award of benefits "is appropriate when the record fully supports a determination that [Plaintiff] is disabled as a matter of law and is entitled to the social security benefits for which he applied." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989).

Although this case has been pending for more than 9 years, a remand for an award of immediate benefits is not appropriate. On remand, the ALJ will need to properly weigh PA-C Hinton's opinion. That determination could affect the ALJ's assessment of Mr. Gutierrez's RFC and his hypothetical to any vocational expert at steps four and five. Accordingly, because additional fact-finding and analysis is necessary on remand, I will deny Mr. Gutierrez's request for an immediate award of benefits. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court may consider whether the ALJ followed the rules of law when weighing certain evidence, but may not reevaluate the evidence or substitute its judgment for the

judgment of the Commissioner); *see also Tucker v. Barnhart*, 201 F. App'x 617, 625 (10th Cir. 2006) (unpublished) (denying request for immediate award of benefits in case that was pending for over nine years because "additional fact-finding and consideration by the ALJ [was] appropriate" on remand); *Winick v. Colvin*, 674 F. App'x 816, 823 (10th Cir. 2017) (unpublished) (denying request for immediate award of benefits in matter pending nearly ten years because "an eventual award of benefits is not foreordained on this record, and further administrative proceedings are appropriate to permit the Commissioner to properly weigh the evidence"). However, based on how long it has been since Mr. Gutierrez first applied for benefits and because this is the second time his case is being remanded, the Court instructs the Commissioner to expedite consideration of Mr. Gutierrez's claims on remand.

## VI.    Conclusion

**IT IS THEREFORE ORDERED** that Mr. Gutierrez's Motion to Reverse and Remand for a Rehearing (Doc. 22) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent

14